The undersigned have reviewed the Award based upon the record of the proceedings before the Deputy Commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner with some modification. Neither party here requested the Full Commission to receive further evidence or to rehear the parties or their representatives. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate award.
**********
The undersigned find as fact and conclude as matters of law the following, which were entered into by the parties in an Industrial Commission Form 21, Agreement for Compensation for Disability, approved by the Industrial Commission on November 29, 1993, a Pre-Trial Agreement and at the initial hearing as
STIPULATIONS
1. On the date of plaintiff's injury, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On that date, an employment relationship existed between plaintiff and defendant.
3. On June 29, 1993, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant. As a result of her injury, plaintiff sustained a cervical strain.
4. Plaintiff received temporary total disability compensation at the rate of $337.08 per week from September 23, 1993 through February 10, 1994.
5. An Industrial Commission Form 22, Wage Chart, marked as Stipulated Exhibit Number Two, is admitted into evidence.
6. A letter dated May 11, 1994, marked as Stipulated Exhibit Number Three is admitted into evidence.
7. A set of plaintiff's medical records, received under a cover letter from plaintiff's counsel dated September 29, 1995, is admitted into evidence.
EVIDENTIARY RULINGS
The objections appearing in the depositions of Dr. Kelly and Dr. Lockert are OVERRULED.
**********
Based upon the competent, credible, and convincing evidence adduced at the initial hearing, the undersigned make the following additional
FINDINGS OF FACT
1. At the time of the initial hearing, plaintiff was a married female fifty-two years of age. Plaintiff became employed by defendant on September 15, 1975. At the time of her injury, she was working as an interior pack out person. The duties of this position were to pack out panel boards and to knock out breakers on shields using a hammer.
2. On June 29, 1993, plaintiff was using a hammer to knock out breakers when she began experiencing pain in her neck. Plaintiff initially presented to ProMed where she was prescribed medications and instructed to massage and apply warm compresses to the tender areas of her neck. On September 23, 1993, plaintiff presented to Dr. Lockert upon referral from ProMed. On that date, plaintiff had a limited range of motion in her neck and spasms of her cervical and trapezius muscles. Dr. Lockert excused plaintiff from work and prescribed physical therapy.
3. Thereafter, plaintiff continued receiving treatment from Dr. Lockert. Diagnostic studies performed on October 19, 1993 revealed that plaintiff had bulging discs from C3 through C7. Plaintiff's bulging discs were not caused by the incident on June 29, 1993. On October 22, 1993, Dr. Lockert discharged plaintiff from his care and referred her back to ProMed.
4. On December 1, 1993, plaintiff referred herself to Dr. Kelly. On that date, plaintiff had no neurologic deficit and no muscle spasm. She had normal reflexes, strength and sensation in her upper extremities. Dr. Lockert prescribed cervical traction for plaintiff's degenerative disc disease.
5. Plaintiff was scheduled to undergo a two-day functional capacity evaluation at Therapy Services of North Carolina beginning February 7, 1994. During the first day of the evaluation, plaintiff demonstrated uncooperative behavior and limited herself unnecessarily. Plaintiff refused to work to her maximum ability when performing lifts, carries, static pushes, static pulls and hand grip strength testing. Plaintiff did not attend the second portion of the functional capacity evaluation that was scheduled for February 8, 1994.
6. On February 8, 1994, plaintiff's supervisor prepared a job analysis for the position of process operator in the interior pack out department. The job duties were to place shields on the interior, place labels on the front of the shield, box the unit and forward the unit to shipping. The lifting requirements of the position were usually less than twenty pounds, with occasional lifting of greater weight. Lifting assistance was always available for weights greater than twenty pounds.
7. On February 9, 1994, Dr. Kelly determined that plaintiff was capable of working in the process operator position. On February 10, 1994, Dr. Lockert made the same determination. Plaintiff was physically capable of performing the duties of a process operator.
8. Thereafter, on February 11, 1994, defendant offered plaintiff the process operator position that had been approved for her by Drs. Lockert and Kelly. Plaintiff refused to accept the position. On February 17, 1994, defendant terminated plaintiff for failing to report to work as a process operator. Plaintiff's refusal to accept the process operator position was not justified.
9. On June 11, 1994, plaintiff presented to the Rowan Memorial Hospital emergency room complaining of neck and shoulder pain. Plaintiff's neck and shoulder pain on that date resulted from having her head in a hair washing sink at a beauty parlor for an extended period of time.
10. On September 7, 1994, Dr. Kelly excused plaintiff from work as a result of neck pain caused by multiple bulging cervical discs. Plaintiff's bulging cervical discs were not caused by the incident on June 29, 1993.
11. Plaintiff next presented to Dr. Kelly on December 29, 1994. Plaintiff's condition on that date was the same as it had been on February 9, 1994. Plaintiff returned to Dr. Kelly in June 1995 complaining of low back pain. Plaintiff's low back pain was not related to her injury on June 29, 1993.
12. Plaintiff has not sought any employment since her unjustified refusal of employment with defendant in February, 1994.
13. The examinations, evaluations and treatments rendered by Dr. Kelly through February 1994 tended to effect a cure, give relief or to lessen plaintiff's period of disability. Although defendant did not specifically authorize plaintiff to seek treatment from Dr. Kelly, defendant was aware of and acquiesced in his treatment of plaintiff through February, 1994.
14. Since February 10, 1994, plaintiff has not sustained a substantial change in her physical condition affecting her capacity to earn wages.
15. On February 10, 1994, plaintiff's injury of June 29, 1993 reached maximum medical improvement. On that date, plaintiff had a five percent permanent partial impairment of her back.
16. On July 16, 1994, the parties submitted a Form 22 Wage Chart requesting that the Industrial Commission calculate plaintiff's average weekly wage. Plaintiff's average weekly wage was $436.52, which yields a compensation rate of $291.03.
17. Pursuant to the parties' Agreement for Compensation for Disability, plaintiff received temporary total disability compensation at the rate of $337.08 per week from September 23, 1993 through February 10, 1994. The compensation received by plaintiff exceeded the amount she was entitled to receive by $927.58.
**********
The foregoing Stipulations and Findings of Fact engender the following
CONCLUSIONS OF LAW
1. On June 29, 1993, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff is entitled to no temporary total disability compensation after February 10, 1994, due to her unjustifiable refusal to accept suitable employment with defendant. N.C. Gen. Stat. § 97-32.
3. Plaintiff has not sustained a substantial change of her physical condition affecting her capacity to earn wages since February 1994. N.C. Gen. Stat. § 97-47.
4. As a result of her injury on June 29, 1993, plaintiff is entitled to payment of permanent partial disability compensation at a rate of $291.03 per week for fifteen weeks. N.C. Gen. Stat. § 97-31(23).
5. Defendant is entitled to a credit of $927.58 against the compensation due plaintiff.
6. Plaintiff is entitled to payment of all medical expenses incurred as a result of her injury on June 29, 1993, for so long as such examinations, evaluations and treatments tend to effect a cure, give relief or will tend to lessen her period of disability. N.C. Gen. Stat. § 97-2(19); N.C. Gen. Stat. §97-25.
***********
Based upon these conclusions of law, the Full Commission make the following
AWARD
1. Defendant shall pay plaintiff permanent partial disability compensation at the rate of $291.03 for fifteen weeks. This amount shall be paid in a lump sum, subject to the credit allowed to defendant in paragraph 4 and the attorney's fee approved for plaintiff's attorney in paragraph 5.
2. Defendant shall pay all medical expenses incurred by plaintiff as a result of her injury on June 29, 1993, for so long as such examinations, evaluations and treatments tend to effect a cure, give relief or will tend to lessen her period of disability.
3. Defendant shall pay all medical expenses incurred by plaintiff as a result of her treatment by Dr. Kelly through February 1994.
4. Defendant shall receive a credit of $927.58 against the compensation due plaintiff in paragraph 1 of this Award.
5. A reasonable attorney's fee of twenty-five percent of the compensation due plaintiff is approved for plaintiff's attorney and shall be paid as follows: twenty-five percent of the compensation due plaintiff under paragraph 2 of this Award shall be deducted from that amount and paid directly to plaintiff's attorney prior to any credit deducted.
6. Defendant shall pay the costs.
This case is ORDERED REMOVED from the Full Commission docket.
This the __________ day of January, 1998.
FOR THE FULL COMMISSION
 S/ _________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ __________________ THOMAS J. BOLCH COMMISSIONER
S/ __________________ BERNADINE S. BALLANCE COMMISSIONER
JHB/kws